UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MOLA, INC.,

           Plaintiff,

    v.                                   **DECISION AND ORDER**
                                          10-CV-1045S

KACEY ENTERPRISES, LLC, and
JERRY A. KACEY *a/k/a Jerry Lehman*,

           Defendants.

## I. INTRODUCTION

Plaintiff Mola, Inc. alleges that the defendants, Kacey Enterprises, LLC, and Jerry A. Kacey, intentionally copied and infringed their federal trade dress for a soft light studio photography reflector — the "Mola beauty dish." Specifically, Plaintiff asserts four causes of action: federal trade dress infringement; federal trademark dilution; dilution of trade dress under N.Y. Gen. Bus. Law § 360-1; and deceptive trade practices under N.Y. Gen. Bus. Law § 349. Plaintiff seeks a preliminary and permanent injunction against Defendants, treble damages under 15 U.S.C. § 1117(a) and N.Y. Gen. Bus. Law § 349(h), costs, and reasonable attorneys' fees.

Presently before this Court is Defendants' Motion to Dismiss[1] Plaintiff's complaint for lack of personal jurisdiction, improper service,[2] and improper venue, pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure. In the alternative,

---

[1]Defendants filed an affirmation and memorandum of law in support of their motion. (Docket No. 4.) Plaintiff filed a memorandum of law in opposition to the motion. (Docket No. 10.) Defendants also filed an affirmation and reply memorandum of law. (Docket No. 11.)

[2]Defendants no longer appear to challenge service given the returns of service Plaintiff filed after Defendants filed their instant motion. This Court therefore will not discuss the parties' arguments regarding service.

1

Defendants move to change venue to the Western District of Washington, pursuant to 28 U.S.C. § 1404(a). For the following reasons, Defendants' motion is denied in part and granted in part.

## II. BACKGROUND

### A. Facts

The following facts are alleged in the complaint and are also drawn from declarations filed in support of Defendants' Rule 12(b)(2) motion. See Langenberg v. Sofair, No. 03 CV 8339, 2006 WL 2628348, at *5 (S.D.N.Y. Sept. 11, 2006) ("courts are authorized to rely on affidavits submitted by the parties in deciding a Rule 12(b)(2) motion to dismiss").

Plaintiff is a corporation incorporated under the laws of the Province of Ontario, Canada, with a principal place of business in Toronto, Ontario, Canada. (Complaint, Docket No. 1 at ¶ 6.) Plaintiff ships its Mola beauty dishes sold in the United States from freight forwarders located in Grand Island and Tonawanda, New York. (Id.) Defendant Kacey Enterprises is a limited liability company incorporated in the State of Washington, with its principal place of business in Snohomish, Washington. (Id. at ¶ 7.) Defendant Jerry A. Kacey is a resident of Washington. (Id. at ¶ 8.)

Plaintiff is the creator of the Mola beauty dish (ornamental design patent no. Des. 298,469) a soft light studio photography reflector, which has been sold publically and commercially by Plaintiff in the United States under the Mola trademark since December 1989. (Id. at ¶¶ 1, 10, 14.)

Before March 2009, Defendants obtained a Mola "Demi" beauty dish, and in February 2010, obtained a Mola "Mantti" beauty dish, for the purpose of making a mold of Plaintiff's designs. (Id. at ¶¶ 20, 26.) Since March 2009, Defendants have made and

2

continue to make, advertise, promote, sell and distribute imitations of the Mola beauty dish under the name "Kacey Beauty Reflector." (Id. at ¶ 21.) Although Plaintiff's Mola beauty dish is made from different materials, Defendants' beauty dish appears substantially similar, if not identical to, Plaintiff's beauty dish. (Id. at ¶ 23.)

"Kacey Beauty Reflectors" are sold through a website maintained by Defendants. (Id. at ¶ 28.) All products are shipped with a shipping label clearly identifying the packages as sent from Kacey Enterprises. (Jerry A. Kacey Affidavit, Docket No. 11 at ¶ 5.) Kacey Enterprises made $4,346.80 in total sales in New York in 2010, $1,001 of which was from the sale of seven "Kacey Beauty Reflectors." (Jerry A. Kacey Affidavit, Docket No. 4 at ¶ 4.) Kacey Enterprises had $106,317.77 in total sales in 2010. (Jerry A. Kacey Affidavit, Docket No. 11 at ¶ 1.)

On several occasions from May 2009 through February 2010, Plaintiff asserted its sole and exclusive ownership of all intellectual property rights in the trade dress of the Mola beauty dish, and requested that Defendants cease and desist from their wrongful acts. (Compl. at ¶ 27.)

### B. Procedural History

Plaintiff commenced this action on December 23, 2010, by filing a complaint in the United States District Court for the Western District of New York. Defendant filed a Motion to Dismiss, or in the alternative, to Change Venue, on January 28, 2011. (Docket No. 4.) Briefing on the motion concluded on March 24, 2011, at which time this Court took the matter under advisement without oral argument.

## III.  DISCUSSION

**A.      Motion to Dismiss Standard**

When challenged with a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. See In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994).  If the court relies on pleadings and affidavits to resolve the motion, rather than a full evidentiary hearing, the plaintiff need make only a *prima facie* showing of personal jurisdiction to carry its burden.  See Distefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999) (citing Marine Midland Bank v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)); Langenberg v. Sofair, No. 03-CV-8339, 2006 WL 2628348, at *2 (S.D.N.Y. Sep. 11, 2006).

In determining whether the plaintiff has made this showing, the court is not obligated to draw "argumentative inferences" in the plaintiff's favor.  Robinson, 21 F.3d at 507 (citing Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)).  But the pleadings and affidavits, and all doubts arising therefrom, are construed in the light most favorable to the plaintiff.  See CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986); see also Langenberg, 2006 WL 2628348, at *5 ("courts are authorized to rely on affidavits submitted by the parties in deciding a Rule 12(b)(2) motion to dismiss").

**B.      Defendants' Motion to Dismiss**

Plaintiff alleges four causes of action against Defendants.  In the first cause of action, brought pursuant to 15 U.S.C. § 1125(a), Plaintiff alleges that Defendants have infringed upon its federal trademark rights.  Plaintiff's second and third causes of action, pursuant to 15 U.S.C. § 1125(c) and N.Y. Gen. Bus. Law § 360-1, allege that Defendants' actions are likely to cause dilution of Plaintiff's federal trademark rights.  Plaintiff's fourth

cause of action, brought pursuant to N.Y. Gen. Bus. Law § 349, alleges that Defendants have engaged in deceptive and misleading acts constituting unfair competition.

Defendants argue that all four causes of action should be dismissed either under Rules 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue, or in the alternative, that the suit should be transferred to the Western District of Washington. This Court will address each of Defendants' challenges in turn.

### 1. Lack of Personal Jurisdiction

"Personal jurisdiction of a federal court over a non-resident defendant is governed by the law of the state in which the court sits – subject of course, to certain constitutional limits of due process." Robinson, 21 F.3d at 510 (internal citations omitted). To determine personal jurisdiction over a non-domiciliary in a case involving a federal question, the Court must engage in a two-step analysis. See Chloe v. Queen Bee of Beverly Hill, LLC, 616 F.3d 158, 163 (2d Cir. 2010) (citing Best Van Lines, Inc. v. Walker, 490 F.3d 239, 243-44 (2d. Cir. 2007)). The Court must first apply the forum state's long-arm statute. Id. If the forum state's long-arm statute permits personal jurisdiction, the court must then analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution. Id.

#### a. New York's Long-Arm Statute

New York's long-arm statute, N.Y. C.P.L.R. § 302(a), authorizes the exercise of personal jurisdiction over non-domiciliaries in certain circumstances. Specifically, a court may exercise personal jurisdiction over any non-domiciliary, who "in person or through an agent: transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. 302(a) (McKinney 2011).

A defendant need not be present in New York to transact business there within the meaning of § 302(a)(1), as long as he engages in "purposeful activities or volitional acts

through which he avails himself of the privilege of conducting activities within the . . . State, thus invoking the benefits and protections of its laws." Queen Bee, 616 F.3d at 169 (quoting Fischbarg v. Doucet, 880 N.E.2d 22 (N.Y. 2007)(internal citations omitted)). New York courts have construed § 302 as a 'single act statute, meaning proof of one transaction in New York is sufficient to invoke jurisdiction, even if the the defendant never enters New York, so long as the defendant's actions in New York were purposeful and there is a substantial relationship between the transaction and the claim asserted. Queen Bee, 616 F.3d at 170 (citing Kreutter v. McFadden Oil Corp., 527 N.Y.S.2d 195 (2d Cir. 1988)). Specifically, in cases involving claims of trademark infringement, a defendant's shipment of goods into New York is found to be purposeful and substantially related to the claim of trademark infringement. Queen Bee, 616 F.3d at 170 (citing Baron Philippe de Rothschild, S.A. v. Paramount Distillers, Inc., 923 F. Supp. 433 (S.D.N.Y. 1996) and Mattel, Inc. v. Adventure Apparel, 2001 WL 286728 (S.D.N.Y. 2001)). The Court of Appeals in Queen Bee noted that the defendant's single act of shipping a counterfeit bag could be sufficient to subject him to personal jurisdiction in New York, but the court ultimately decided that the fifty-two other transactions carried out by the defendant sufficiently demonstrated the defendant's purposeful availment of the benefits of transacting business in New York. Id. at 170-71.

### i. Personal Jurisdiction over Kacey Enterprises

Here, Plaintiff alleges that Kacey Enterprises advertises, promotes, sells and distributes its infringing Kacey beauty dishes in New York through its website. (Compl. at ¶ 28.) Jerry Kacey, the sole owner of Kacey Enterprises, maintains that he has never been to New York for any business purpose. (Affidavit Docket No. 11 at ¶ 6.) But Kacey admits sales in New York for 2010 of $4,346.80, of which $1,001 was from the sale of seven Kacey beauty reflectors that are the subject of this litigation. (Affidavit Docket No. 4 at ¶

4.)

Accordingly, this Court finds that it can lawfully exercise personal jurisdiction over Defendant Kacey Industries under New York's long-arm statute. A single act of selling an allegedly infringing good can serve as the basis for exercising jurisdiction. See Queen Bee, 616 F.3d at 170-71. Here there are seven admitted sales. By these sales, Kacey Enterprises has purposefully availed itself of the benefits of transacting business in New York. And because the sales involved shipment of the allegedly infringing product, there is a substantial relationship between the transactions in New York and the claims asserted.

### ii. Personal Jurisdiction over Jerry A. Kacey

The Court of Appeals held in Queen Bee, that the single act of an out-of-state defendant employee shipping an item into New York, combined with his employer's extensive business activity involving New York, gives rise to personal jurisdiction over the employee. Queen Bee, 616 F.3d at 165. In finding personal jurisdiction over the individual defendant, the court cited substantial evidence that the defendant was either responsible for, or physically shipped the counterfeit products to New York. Id. at 165. The defendant's office, which was also the address listed on the shipping labels, was not used by anyone other than the defendant. Id. There was also evidence in the record that the defendant in that case was responsible for the coordination of purchase and shipment of the product to purchasers across the country. Id.

Here, Defendant Jerry A. Kacey is the sole owner of Kacey Enterprises (Jerry A. Kacey Affidavit, Docket No. 4 at ¶ 1), and he and his wife are the only members of the corporation (Jerry A. Kacey Affidavit, Docket No. 11 at ¶ 2). All products are shipped with a label containing the address of 1309 Bonneville Avenue, Washington, the address of Kacey Enterprises's offices. (Jerry A. Kacey Affidavit, Docket No. 11 at ¶ 5.)

As previously found above, the Defendant corporation, Kacey Enterprises, transacts

business in New York, such that the single act of an out-of-state defendant employee could subject the individual employee to personal jurisdiction. Here, Plaintiff has pleaded sufficient facts to implicate the individual, Jerry A. Kacey, in the act of shipping product from Washington to New York State. (Complaint at ¶ 28.) Accordingly, this Court finds that it can lawfully exercise personal jurisdiction over the individual Defendant, Jerry A. Kacey, under New York's long-arm statute.

### b. Due Process

Even if personal jurisdiction is proper under New York's long-arm statute, which it is here, "the Due Process Clause limits the exercise of jurisdiction to persons having certain 'minimum contacts' with the forum state." Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 370 (2d Cir. 1997) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) and Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)). Consistent with due process, a court may exercise personal jurisdiction only over a defendant whose "'conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" Burger King, 471 U.S. at 474 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980)).

### i. Minimum Contacts

To justify the exercise of personal jurisdiction, there must be a showing of minimum contacts with the forum state or "'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Burger King, 471 U.S. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239- 40, 2 L. Ed. 2d 1283 (1958)). This Court finds that Plaintiff has made this requisite showing.

As previously noted, Defendant Kacey Industries had repeated and purposeful

contact with New York through the seven shipments of its Kacey beauty reflector and $4,346.80 worth of sales in New York. (Jerry A. Kacey Affidavit Docket No. 4 at ¶ 4.) Although Kacey Enterprises is not licensed to do business in New York, does not have offices, agents, bank accounts, telephone or fax numbers in New York (Jerry A. Kacey Affidavit Docket No. 4 at ¶¶ 5-9), "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities. Burger King, 471 U.S. at 472-73. Therefore, this Court finds that it does not offend due process to hold Defendants accountable for the harm they allegedly caused in New York through their purposeful availment of New York's consumer market.

### ii. Reasonableness

The United States Supreme Court has set forth five factors that must be considered when determining the reasonableness of a particular exercise of jurisdiction where an out-of-state defendant purposely avails himself of the forum state, so that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (internal quotation marks omitted). A court must consider (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies. Id.

Application of these factors supports the exercise of personal jurisdiction over Defendants. With regard to the first factor, this Court acknowledges the burden to Defendants if made to travel from Washington to New York for trial. But when minimum contacts have been established, the interest of the plaintiff and forum's exercise of

jurisdiction will justify even serious burdens placed on the out-of-state defendant. Id. at 114. Regarding the second factor, New York has a legitimate interest in adjudicating the dispute. See Meyers v. ASICS Corp., 711 F. Supp. 1001, 1007 (C.D.C.A. 1989) (finding that under the reasonableness inquiry, California had an interest in preventing patent infringement from occurring within its borders when defendant allegedly sold patent-infringing products to California residents even though plaintiff was not a resident of California ). As discussed above, Defendants availed themselves of the New York forum by allegedly selling infringing products in New York. And although Plaintiff is a foreign corporation, it maintains or uses freight forwarding business operations in New York. Therefore, this factor weighs in favor of exercising personal jurisdiction. The third and fourth factors likewise weigh in favor of finding jurisdiction because Plaintiff has brought its claim in New York and New York has an interest in resolving the controversy efficiently. The fifth factor is neutral.

Accordingly, this Court finds that it can lawfully and reasonably exercise personal jurisdiction over Defendants under the Due Process Clause.

### 2. Improper Venue

Defendants argue that venue is improper in the Western District of New York. Defendants contend that venue should be determined under 28 U.S.C. § 1400, and that Plaintiff cannot meet the requirements of that statute to establish proper venue.

Plaintiff argues that the Western District of New York is the proper venue for its trade dress infringement claims under 28 U.S.C. § 1391(b). Plaintiff further argues that Defendants' arguments concerning venue under 28 U.S.C. § 1400 are inapposite because that statute specifically applies to determining venue for alleged patent or copyright

violations, which Plaintiff has not included in its complaint.

This Court finds that venue is proper here under 28 U.S.C. § 1391. See Hubel Inc. v. Pass & Seymour, Inc., 883 F. Supp. 955, 962 (S.D.N.Y. 1995) (establishing venue for trade dress infringement claim under 28 U.S.C. § 1391); D'Anton Jos, S.L., v. The Doll Factory Inc., 937 F. Supp. 320, 321 (S.D.N.Y. 1996) (same); Eastman Kodak Co. v. Photaz Imports, 853 F. Supp. 667, 679 (W.D.N.Y. 1993) (same). Section 1391(b) provides that when the jurisdiction of a civil action is not founded solely on diversity of citizenship, such action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants reside in the same State;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or
>
> (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b)

Section 1391(c) provides that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Defendant Kacey Enterprises's argument that § 1391(c) does not apply because it is not subject to personal jurisdiction in New York is foreclosed by this Court's findings above. As such, this Court finds that venue is proper here as to both defendants pursuant to 28 U.S.C. § 1391(b)(2). See Gregory v. Pocono Grow Fertilizer Corp., 35 F. Supp. 2d 295, 297-99 (W.D.N.Y. 1999) (finding the language of 28 U.S.C. § 1391 is properly interpreted to provide alternative bases for venue).

Defendants are correct that § 1391(b)(1) establishes venue for only Kacey Enterprises, because § 1391(c) discusses only corporate defendants.

But venue is appropriate for both the corporate and the individual defendants under § 1391(b)(2). First, venue in a trade dress infringement case is proper in each jurisdiction where the infringement is alleged to have occurred. Time Prods., PLC, v. J. Tiras Classic Handbags Inc., No. 93 Civ. 7856, 1997 WL 139525, at *4 (S.D.N.Y. Mar. 26, 1997) (citing Cottman Transmission Sys. Inc. v. Martino, 36 F.3d 291, 295 (3d Cir. 1994)). Both the corporate and individual defendants are alleged to have sold infringing products in this judicial district. (Compl. ¶ 28). Next, New York courts have interpreted the phrase "a substantial part of the events" in § 1391(b)(2) to apply to a defendant's act of selling a substantial amount of infringing goods in New York. D'Anton, 937 F. Supp. at 321 (citing French Transit v. Modern Coupon Sys., 858 F. Supp. 22, 26 (S.D.N.Y. 1994)). There is no minimum percentage of total sales that must be met. Alcoholics Anonymous World Servs. Inc. v. Friedman, No. 91 Civ. 8741(RLC), 1992 WL 150633, at *4 (S.D.N.Y. June 17, 1992) (citing Schieffelin & Co. v. Jack Co., 725 F. Supp. 1314, 1320 (S.D.N.Y. 1989) (collecting cases)). Here, Defendants sold seven allegedly infringing products worth $1,001 in New York. These sales are sufficient to qualify as "a substantial part of the events." Therefore, venue is proper in the Western District of New York under § 1391(b)(2).

**3.   Defendants' Motion to Change Venue**

**a.   Legal Standard**

A district court may transfer a civil action to any other district where the case might

have been brought if the transfer serves "the convenience of the parties and witnesses, [and is] in the interest of justice." 28 U.S.C. § 1404(a). The primary goal of § 1404(a) is to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960).

In determining whether the interests of justice and convenience support transfer, district courts evaluate nine factors: (1) the convenience of witnesses; (2) the convenience of parties; (3) the location of the relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative financial means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight afforded plaintiff's choice of forum; and (9) judicial economy and the interests of justice. Herbert Ltd. P'ship v. Elec. Arts Inc., 325 F.Supp.2d 282, 285-86 (S.D.N.Y. 2004). Courts have broad discretion in making determinations of convenience under § 1404(a) and notions of convenience and fairness are considered on a case-by-case basis. D.H. Blair & Co., Inc. v Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006).

  **b. Analysis**

    **i. The Convenience of the Witnesses and Parties**

"The convenience of both party and non-party witnesses is probably the single most important factor in the analysis of whether transfer should be granted." Wagner v. N.Y. Marriot Marquis, 502 F. Supp. 2d 312, 315 (N.D.N.Y. 2007) (internal quotation marks and citation omitted). Although "the convenience of non-party witnesses is accorded more

13

weight than that of party witnesses," party witnesses are still relevant. ESPN, Inc. v. Quicksilver, Inc., 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008).

To demonstrate the alleged inconvenience, the "party moving to transfer on the ground that witnesses will be inconvenienced is obliged to 'name the witnesses who will be appearing and describe their testimony . . . .'" Beatie and Osborn LLP v. Patriot Scientific Corp., 431 F. Supp. 2d 367, 396 (S.D.N.Y. 2006) (quoting Schieffelin & Co. of Boca, Inc., 725 F. Supp.1314, 1321 (S.D.N.Y. 1989)). But in cases where discovery has not been conducted, a party "will not be held to the requirement of stating with precision each witness and document." Heyco, Inc. v. Heyman, 636 F. Supp. 1545, 1549-50 (S.D.N.Y. 1986). In these circumstances, courts are permitted to determine the logical location of the witnesses based upon an examination of the record. Id.

Here, none of the parties specifically identify the witnesses who will testify, nor do they identify the nature of such testimony. But the complaint, affidavits, and other submissions reveal that the non-party witnesses are likely located in both Washington State (Defendants' domicile) and Ontario, Canada (Plaintiff's domicile). All of Defendants witnesses are in Washington and Plaintiff has not identified any witnesses in New York. Although New York is closer and therefore arguably more convenient for Plaintiff and its witnesses, it remains that witnesses from Ontario will have to travel either way. This factor therefore favors transfer.

        **ii.      The Locus of the Operative Facts and the Location of the Relevant Documents**

These factors weigh in favor of transfer. The operative facts in a trade dress infringement case generally relate to the design, development, and production of the

infringing product.  Capitol Records, LLC v. Videoegg, Inc., 611 F.Supp.2d 349, 367 (S.D.N.Y. 2009).  The Kacey Beauty reflector was designed, developed, and produced in Washington State.  Plaintiff argues that New York is connected to the trademark dilution claim because the allegedly infringing products were sold here.  But "[w]here a party's products are sold in many states, sales alone are insufficient to establish a material connection to the forum and to override other factors favoring transfer."  Invivo Research, Inc. v. Magnetic Resonance Equip. Corp., 119 F.Supp.2d , 433, 439-40 (S.D.N.Y. 2000).

As to the location of relevant documents, this factor is neutral.  See Am. Steamship Owners Mut. Protection and Indem. Ass'n. Inc. v. LaFarge N. Am., Inc., 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) (finding that although the location of documents is a proper consideration, it has become "largely a neutral factor in today's world of faxing, scanning, and emailing documents").

### iii. The Availability of Process to Compel the Attendance of Unwilling Witnesses

This factor calls for a determination of which court possesses subpoena power to compel the attendance of unwilling witnesses.  See Beatie, 431 F.Supp.2d at 397-98.  Here, the Western District of Washington would have power to subpoena at least the witnesses residing there, whereas this Court has neither the power to subpoena witnesses in Washington nor Ontario.  Consequently, this factor weighs in favor of transfer.

### iv. The Relative Financial Means of the Parties

The relative financial means of the parties favors transfer. Defendants assert that Kacey Enterprises is a limited liability company with only two members and sales of $106,317.77 in 2010, while Plaintiff Mola Inc. is a corporation that sells its products
15

internationally in major cities through a network of dealers. Plaintiff does not dispute this characterization or assert that it will be overly burdened by travel costs if made to litigate this case in another jurisdiction. This factor therefore weighs in favor of transfer.

### v. The Comparative Familiarity of Each District with the Governing Law

This factor supports transfer when a federal court based in one state is asked to apply the law of another state. See Heyco, 636 F.Supp. at 1550-51 (holding that this factor supports transfer because "[a] New Jersey federal court is better suited to apply New Jersey state law than is a New York federal court."). Here, Plaintiff's claims are predominantly federal, rendering this factor neutral.

### vi. The Weight Afforded to Plaintiff's Choice of Forum

Ordinarily, the plaintiff's choice of forum is accorded relatively greater importance than the other factors. "That is not the case, however, when the operative facts have few meaningful connections to the plaintiff's chosen forum." Harris v. Brody, 476 F. Supp. 2d (S.D.N.Y.2007) (citing Berman v. Informix Corp., 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998)). Under those circumstances, the importance of the plaintiff's choice of forum measurably diminishes. Harris, 476 F. Supp. 2d at 406 (internal citation omitted). And although Plaintiff's choice of forum is entitled to significant deference, this factor is no longer given the "near-decisive weight" previously afforded under the predecessor of 28 U.S.C. § 1404(a), forum non conveniens. See HGI Marketing Servs., Inc. v. Pepsico, Inc., No. 92 Civ. 981, 1992 WL 349675, at *4 (N.D.N.Y. Nov. 11, 1992) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)); see also Vasallo v. Niedermeyer, 495 F. Supp. 757, 759 (S.D.N.Y. 1980). Here, Plaintiff does not reside in New York, nor did all of the operative

16

facts arise here. Therefore, application of the relevant factors demonstrates that Plaintiff's choice of forum is not entitled to significant deference.

### vii. Judicial Economy and the Interests of Justice

"The relative docket conditions of the transferor and transferee courts are relevant to the determination of a motion to transfer venue pursuant to 28 U.S.C. § 1404(a)." Eichenholtz v. Brennan, 677 F.Supp. 198, 202 (S.D.N.Y. 1988). Courts have measured docket congestion by considering the median disposition time to resolve a case, see In re Hanger Orthopedic Group, Inc, Secs. Litig., 418 F. Supp. 2d 164, 171 (E.D.N.Y. 2006), or the comparative increase in cases over a 12-month period of time, Eichenholtz, 677 F. Supp. at 202.

Examination of each court's respective dockets reveals that this factor is largely neutral. This Court's median disposition time to resolve a civil case, as measured over the 12-month period ending March 12, 2010, is 9.4 months, versus the Western District of Washington's 6.5 months.[3] But over the same 12-month period, this Court's civil and criminal filings have increased 11% and decreased 11%, respectively, while the Western District of Washington's civil and criminal filings have both increased — 5.8% and 7.9%, respectively. Id.

For the reasons stated above, this Court finds that a balance of the nine factors weighs in favor of transferring venue to the Western District of Washington. Defendants'

---

[3]See Administrative Office of the United States Courts, Federal Judicial Caseload Statistics 2010, available at
http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadStatistics/2010/tables/C05Mar10.pdf (last visited July 22, 2011).

17

Motion to Change Venue will therefore be granted.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is denied and Defendants' Motion to Change Venue is granted.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss or Change Venue (Docket No. 4) is DENIED in part and GRANTED in part.

FURTHER, that this case shall be transferred to the United States District Court for the Western District of Washington, pursuant to 28 U.S.C. § 1404(a).

FURTHER, that the Clerk of Court shall transfer this case to the Western District of Washington and then close this case.

SO ORDERED.

Dated: August 21, 2011
 Buffalo, New York

                                                  /s/William M. Skretny
                                                  WILLIAM M. SKRETNY
                                                         Chief Judge
                                                United States District Court